IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| SPRING BRANCH WILDLIFE § <br> PRESERVE and HOUSTON LAND § <br> & CATTLE CO., L.C. § <br>  § <br> v. § <br>  § <br> UNITED STATES ENVIRONMENTAL § <br> PROTECTION AGENCY; ANDREW § <br> WHEELER, in his official capacity as § <br> Administrator of the EPA; UNITED § <br> STATES ARMY CORPS OF § <br> ENGINEERS; and RICHEY "R.D." § <br> JAMES, in his official capacity as § <br> Assistant Secretary for the CORPS' § <br> Civil Works program § | Case No. _____ <br><br> JURY DEMAND |

## COMPLAINT

Plaintiffs, Spring Branch Wildlife Preserve and Houston Land & Cattle Co., L.C., file this complaint against Defendants, United States Environmental Protection Agency (the EPA); Andrew Wheeler, in his official capacity as Administrator of the EPA; United States Army Corps of Engineers (the Corps); and Richey "R.D." James, in his official capacity as Assistant Secretary of the Corps' Civil Works program.

### I.

### Parties

1.   Plaintiff, Spring Branch Wildlife Preserve, a Texas non-profit organization, has its principle place of business and owns property at issue in this case located in Brazoria County, Texas.

1

2. Plaintiff, Houston Land & Cattle Co., L.C., a Texas limited liability company, has its principle place of business and owns property at issue in this case located in Brazoria County, Texas.

3. Defendant, United States Environmental Protection Agency (the EPA), is an independent agency of the U.S. government and oversees and enforces the Clean Water Act.

4. Defendant, Andrew Wheeler, is the Administrator of the EPA and is sued in his capacity as the Administrator.

5. Defendant, United States Army Corps of Engineers (the Corps), is a branch of the Department of the Army and oversees and enforces the Clean Water Act in a shared capacity with the EPA.

6. Defendant, Richey "R.D." James, is the Assistant Secretary of the Corps' Civil Works program and is sued in his capacity as the Administrator.

## II.

## Jurisdiction

7. Jurisdiction is founded upon 5 U.S.C. § 702 (judicial review of agency action under the Administrative Procedure Act); 5 U.S.C. § 704 ("Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review."); 28 U.S.C. § 1331 (federal question); 5 U.S.C. § 1346(a)(2) (takings claim against the United States below $10,000); *compare with* 28 U.S.C. § 1491 (takings claim against the

United States above $10,000 is with the U.S. Court of Federal Claims); and 28 U.S.C. § 2201 (authorizing declaratory relief).

8. Plaintiffs have exhausted all administrative remedies.

9. This action is timely under 28 U.S.C. § 2401(a) because this action have been commenced against the United States within six years after the right of action first accrued.

### III.

### Venue

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391(e)(1), because a substantial part of the events or omissions giving rise to the claim occurred in this District, and the real property at issue in this case is located in this District. *See also* 5 U.S.C. § 703 (venue for actions under the Administrative Procedure Act generally proper in "a court of competent jurisdiction").

### IV.

### The Two Tracts of Land at Issue in this Case

11. Spring Branch Wildlife Preserve owns land, some of which the Corps claims is wetlands, located along Bluewater Highway in the Village of Surfside, Texas, which is described as:

> BEGINNING at the intersection of the North ROW line of CR 257 (Bluewater Hwy.) and the common line between lots 186 and 187, BCIC Division 1;
>
> THENCE South 76° 43' 13" West, along the North ROW line of CR 257 a distance of 350 ft. to a point for the Southwest corner of the herein described Tract of land;

3

> <u>THENCE</u> North 43° 12' 25" West, a distance of 300 ft. to a point for the Northwest corner of the herein described tract of land;
>
> <u>THENCE</u> North 76° 43' 13" East, a distance of 350 ft. to a point for the Northeast corner of the herein described tract of land;
>
> <u>THENCE</u> South 43° 12' 25" East, a distance of 300 ft. to the POINT OF BEGINNING.

As more fully explained in the Background Facts below, Spring Branch Wildlife Preserve has been performing dirt work on a portion of the wetlands under Nationwide Permit (NWP) 12 and NWP 14.

12. Houston Land & Cattle Co., L.C. owns land, some of which the Crops claims is wetlands, located along Bluewater Highway in the Village of Surfside, Texas, which is described as:

> Lots 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 182, 183, 184, 185, and 186 BCIC Division 1, A0009, B. T. Archer Survey, and Lots 5 and 6 and part of Lots 7 and 8 BCIC Division 8, A0051, F. Calvit Survey, located in Brazoria County, Texas, containing 85 acres, more or less.

As more fully explained in the Background Facts below, Houston Land & Cattle Co., L.C. has been performing dirt work on a portion of the land that is not wetlands.

## V.

## Background Facts

13. The EPA and the Corps are the agencies of the federal government that regulate wetlands. Both agencies have authority under § 404 of the Clean Water Act (CWA or Act), 86 Stat. 884, as amended, 33 U.S.C. § 1344, but the

Corps alone has authority under § 10 of the Rivers and Harbors Act. 33 U.S.C. § 403. The principal law providing wetlands regulatory authority is the Act. In this regard, the Corps administers the wetlands permit program and the EPA mostly exercises certain review and policy-setting functions.

14. Section 404(a) of the Act limits federal jurisdiction to "navigable waters," 33 U.S.C.A. § 1344(a), which it then defines in § 502(7) as "waters of the United States." 33 U.S.C. § 1362(7). Section 404 of the Act requires that a permit be obtained from the Corps for the discharge of dredged or fill material in "waters of the United States." 33 U.S.C. §§ 1311(a), 1262(7), (12). For purposes of the Act, the term "waters of the United States" means "adjacent wetlands." 33 C.F.R. § 328.3(a)(4). By definition, "adjacent wetlands" can only be adjacent to the territorial seas, a traditional navigable water, a tributary, or a lake, pond, or impoundment of jurisdictional water. 33 C.F.R. § 328.3(c)(1). So if adjacent wetlands do not touch waters of the United States, the Corps and EPA do not have jurisdiction under the Act to regulate the land. In short, individuals cannot undertake activities involving fill, even on privately owned land, if that land comes within the definition of adjacent wetlands unless the individual obtains a Corps permit; and conversely, the Corps and EPA cannot interfere with a landowner's activities on lands that are not "waters of the United States."

15. As a matter of administrative procedure, the Corps must first determine whether it has authority over the land in question by making a "jurisdictional determination" before it can regulate a landowner's activities. The

jurisdictional determination turns on whether the land includes "waters of the United States." Once the Corps has determined that it has jurisdiction, the landowner must obtain a permit from the Corps or fall under a nationwide permit to proceed. A landowner can seek a determination from the Corps district office of a jurisdiction determination. 33 C.F.R. §§ 320.1(a)(6) and 325.9. But, the Corps and EPA have not authority to order a landowner to cease and desist from working on land that they have no jurisdiction over, such as the land owned by Houston Land & Cattle Co., L.C.

16.     The 1977 Amendments to the Act, under § 404(e)(1), authorize the Corps to issue general permits on a state, regional, and nationwide basis for any category of activities where the activities are similar in nature and will have only minimal individual and cumulative environmental impacts. 33 U.S.C. § 1344(e)(1). In some cases an activity covered by a general permit can proceed with no paperwork or notification so long as the terms of the general permit and the conditions for all general permits are met. In other cases, a notification to the Corps is required to allow it to determine if the activity causes more than minimal adverse impacts and requires an individual permit. The most significant permits are called nationwide permits (NWPs). NWPs are issued by the Corps headquarters in Washington, D.C. and apply throughout the country. 33 C.F.R. § 320.1(c) and 33 C.F.R. § 330.1. Many of the NWPs require the landowner to notify the Corps before undertaking construction under the NWP. This allows the

Corps to determine whether the NWP applies and to consult with federal and state agencies. The NWPs at issue in this case are NWP 12 and NWP 14.

17.     Ted Dahl, acting on behalf of Spring Branch Wildlife Preserve, sent a Pre-Construction Notification (PCN) to the Corps regarding its land pursuant to NWP 12, NWP 14, and NWP 29, which was revised to remove NWP 29. And, on or about April 23, 2018, Ted Dahl, sent an amended PCN regarding Spring Branch Wildlife Preserve's land pursuant to NWP 12 and NWP 14. The PCN and the amended PCN state that Spring Branch Wildlife Preserve would be filling an area of wetlands located on the land; namely, a 75' x 280' strip for a right-of-way. These PCNs had nothing to do with the land owned by Houston Land & Cattle Co., L.C.

18.     General Condition 32(a) of NWP 12 and NWP 14 require the Corps to respond to the PCNs, in writing, within 45 days; since the Corps did not respond timely to the PCN filed by Spring Branch Wildlife Preserve, General Condition 32(a) authorize Spring Branch Wildlife Preserve to begin work on the wetlands portion of its land.

19.     About eight months after Spring Branch Wildlife Preserve sent its PCNs were sent, having heard nothing from the Corps, Spring Branch Wildlife Preserve began filling the wetlands described in the PCNs. At this same time, Houston Land & Cattle Co., L.C. began doing dirt work on the portion of its land that is not a wetland.

20. About one year after Spring Branch Wildlife Preserve and Houston Land & Cattle Co., L.C. began work they gave the Corps permission to inspect both tracts of land.

21. Shortly after the Corps inspected the two tracts of land, the Corps sent Spring Branch Wildlife Preserve **and** Houston Land & Cattle Co, L.C. a letter stating it was the Corps' belief that Spring Branch Wildlife Preserve and Houston Land & Cattle Co., L.C. were illegally filling wetlands and requesting them to explain. Spring Branch Wildlife Preserve and Houston Land & Cattle Co., L.C. explained that (1) Spring Branch Wildlife Preserve was filling the wetlands legally pursuant to the PCN and the amended PCN and the passage of more than 45 days had passed without a response from the Corps which made the filling legal under NWP 12 and NWP 14; and (2) Houston Land & Cattle Co., L.C. was not filing any wetlands. About a month or so later, on or about December 17, 2019, the Corps sent Spring Branch Wildlife Preserve and Houston Land & Cattle Co, L.C. a cease and desist letter and notifying them that the EPA would be taking the matter over from the Corps. The EPA then sent another cease work order.

22. Under the current definitions, which did not exist when Spring Branch Wildlife Preserve sent its PCN, neither the land owned by Spring Branch Wildlife Preserve nor the land owned by Houston Land & Cattle Co, L.C. are adjacent wetlands that touch the waters of the United States, and therefore, the Corps and the EPA do not have jurisdiction over any of the activities being

conducted by Spring Branch Wildlife Preserve on its property or the activities by Houston Land & Cattle Co., L.C. on its property.

## VI.

## Causes of Action

23. The Administrative Procedure Act (APA) authorizes suit by "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. Under the APA, the actions of the Corps and the EPA must be "set aside" if they are "arbitrary" or "capricious." 5 U.S.C. § 706(2)(A). In that regard, a federal court may order an agency to act where the agency fails to carry out a mandatory, nondiscretional duty. 5 U.S.C. § 706(1). The agency action must be "final agency action," 5 U.S.C. § 704, or the agency action must be "unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1), before a federal court may intervene. Here, the Corps and the EPA's cease and desist notifications are final administrative action for purposes of the APA, which authorize judicial review because the action causes Plaintiffs to suffer legal wrongs that adversely affects their property interests, and the action is arbitrary and capricious as to Spring Branch Wildlife Preserve because Spring Branch Wildlife Preserve's activities are authorized by NWP 12 and NWP 14; and the action is arbitrary and capricious as to Houston Land & Cattle Co., L.C. because the Corps and the EPA do not have jurisdiction under the Act to prevent Houston Land & Cattle Co., L.C. from working on non-wetland property. Accordingly, Spring Branch Wildlife Preserve

9

sues for a declaratory judgment that it is entitled to proceed with the work described in their PCN and amended PCN; and Houston Land & Cattle Co, L.C. sues for a declaratory judgment that it is entitled to proceed with the work because the Corps and EPA do not have jurisdiction of the land where it is working. This relief is wanted for the reasons stated above and for the additional reason that under the current definitions, which did not exist when Spring Branch Wildlife Preserve sent its PCN, neither the land owned by Spring Branch Wildlife Preserve nor the land owned by Houston Land & Cattle Co, L.C. are adjacent wetlands that touch the waters of the United States, and therefore, the Corps and the EPA do not have jurisdiction over any of the activities being conducted by Spring Branch Wildlife Preserve on its property or the activities by Houston Land & Cattle Co., L.C. on its property.

24. The actions of the Corps and the EPA resulted in a taking of Spring Branch Wildlife Preserve and Houston Land & Cattle Co, L.C.'s property under the Takings Clause of the U.S. Constitution. Therefore, Spring Branch Wildlife Preserve and Houston Land & Cattle Co, L.C. sue the EPA, Andrew Wheeler, in his official capacity as Administrator of the EPA, the Corps, and Richey "R.D." James, in his official capacity as Assistant Secretary of the Corps' Civil Works program for inverse condemnation because they intentionally performed the acts in question which resulted in a taking of plaintiffs' property for public use. Defendants' acts have caused a material and substantial impairment of access to plaintiffs' property, which results in a diminution in the value of the property,

thereby giving rise to Spring Branch Wildlife Preserve and Houston Land & Cattle Co, L.C.'s right to recover damages for the loss from defendants. In that regard, Spring Branch Wildlife Preserve and Houston Land & Cattle Co, L.C. will show that defendants' actions have either denied plaintiffs of all economically viable use of their property, or have unreasonably interfered with their right to use and enjoy their property. Plaintiffs will show that they have affected a taking because defendants' actions do not substantially advance legitimate government interests. Spring Branch Wildlife Preserve and Houston Land & Cattle Co, L.C. seek actual damages, special damages, costs of court, expenses, pre-judgment interest, and post-judgment interest.

## VII.

## Jury Demand

25.    Plaintiffs, Spring Branch Wildlife Preserve and Houston Land & Cattle Co, L.C., demand a jury trial.

## PRAYER

WHEREFORE, Plaintiffs, Spring Branch Wildlife Preserve and Houston Land and Cattle Company, LC, request that Defendants, the EPA, Andrew Wheeler, in his official capacity as Administrator of the EPA, the Corps, and Richey "R.D." James, in his official capacity as Assistant Secretary of the Corps' Civil Works be cited to appear and answer, and that on final trial, (1) Spring Branch Wildlife Preserve have a declaratory judgment that it is entitled to proceed with the work described in its PCN and amended PCN, (2) Houston Land

& Cattle Co, L.C. have a declaratory judgment that it is entitled to proceed with the work because the Corps and EPA do not have jurisdiction of the land where it is working, and (3) that Spring Branch Wildlife Preserve and Houston Land & Cattle Co, L.C. have a money judgment against defendants, for actual damages, and special damages; and costs of court.

Respectfully submitted,

/s/Timothy A. Hootman
Timothy A. Hootman
Federal I.D. No. 12331
SBN: 09965450
2402 Pease St
Houston, TX 77003
713.247.9548 (office)
713.366.6229 (cell)
thootman2000@yahoo.com

ATTORNEY FOR PLAINTIFFS