United States District Court
Southern District of Texas
**ENTERED**
September 17, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

No. 3:20-cv-225

SPRING BRANCH WILDLIFE PRESERVE, *et al., Plaintiffs,*

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,
*et al., Defendants.*

## MEMORANDUM OPINION AND ORDER

JEFFREY VINCENT BROWN, *UNITED STATES DISTRICT JUDGE*:

Before the court is the defendants' motion to dismiss.[1] Having considered the parties' arguments, the pleadings, and the applicable law, the court grants the motion.

1. **BACKGROUND**

The plaintiffs, Spring Branch Wildlife Preserve and Houston Land & Cattle Co. (HL&C), filed this action against the United States Environmental Protection Agency, the United States Army Corps of Engineers, and two of their administrators.[2] There are two adjacent tracts of land at issue, both

---

[1] Dkt. 13.

[2] Dkt. 10 ¶¶ 3-6.

along the Bluewater Highway in Brazoria County, one belonging to Spring Branch and the other to HL&C.[3] Both contain areas classified as wetlands.[4]

The plaintiffs have sued for declaratory relief and for damages under the Constitution's Takings Clause.[5] Spring Branch and HL&C both seek a declaration that the Corps has no regulatory jurisdiction under the Clean Water Act over the waters on their tracts. Spring Branch also seeks a declaration that it can proceed with a construction project on its property under what are known as "Nationwide Permits" (NWPs) under the Clean Water Act.

In February 2018, Spring Branch sent a pre-construction notice (PCN) to the Corps describing its plans, under the purported authority of three particular NWPs, to use some of the wetlands on its tract to create a commercial- and recreational-boating facility.[6] When Spring Branch later sent an amended PCN,[7] the Corps responded that the project could not be verified under the NWPs and that Spring Branch would have to apply for an

---

[3] *Id.* ¶¶ 11-12.

[4] *Id.*

[5] *Id.* ¶¶ 23-26.

[6] Dkt. 13-2; *see also* Dkt. 10 ¶¶ 17, 23.

[7] Dkt. 13-5; *see also* Dkt. 10 ¶¶ 17, 23.

individual permit.[8] But instead of applying for an individual permit, Spring Branch proceeded without one.[9]

In September 2019, the Corps learned that fill material from Spring Branch's project had been discharged into wetlands on both tracts.[10] Both plaintiffs received Notifications of Violations (NOVs) from the Corps as well as notice that the Corps had referred the matter to the EPA for possible enforcement.[11] Spring Branch also received two letters from the EPA—one noting the referral from the Corps[12] and the other outlining possible enforcement options and recommending "no further work in wetlands, streams or channels at the site."[13]

## 2.  THIS MOTION

The defendants now move to dismiss all the plaintiffs' claims under Rules 12(b)(1) and 12(b)(6).[14] The defendants assert that this court lacks

---

[8] Dkt. 13-6; *see also* Dkt. 10 ¶ 23.

[9] Dkt. 18 at 3.

[10] Dkt. 13-1; *see also* Dkt. 10 ¶¶ 20, 21, 23.

[11] Dkt. 13-7; Dkt. 13-8; Dkt. 13-9; Dkt. 13-10.

[12] Dkt. 13-11. In this letter, the EPA also advised Spring Branch: "To minimize additional damages, you must cease any ongoing discharge" into the wetlands. *Id.*

[13] Dkt. 13-12.

[14] Dkt. 13. Although the defendants seek dismissal under both rules, the court need not reach their arguments under Fed. R. Civ. P. 12(b)(6) because the case must be dismissed for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1).

subject-matter jurisdiction over the declaratory-relief claims because there has been no final agency action to warrant judicial review under the Administrative Procedure Act (APA). The defendants also assert that the plaintiffs' takings claims are unripe.

### 3. STANDARD OF REVIEW

Under Rule 12(b)(1), plaintiffs bear the burden of establishing the court's "jurisdiction by affirmatively alleging the facts conferring jurisdiction in their complaints."[15] Courts should grant a Rule 12(b)(1) motion if it appears the plaintiff cannot prove a plausible set of facts that establish subject-matter jurisdiction.[16] When dismissal is urged under 12(b)(1) as well as other grounds under Rule 12, the court should consider the 12(b)(1) jurisdictional attack before addressing any other.[17]

### 4. DECLARATORY RELIEF

The APA governs judicial review of Clean Water Act permitting.[18] And under the APA, judicial review is available only when there has been "a final

---

[15] *Gaar v. Quick*, 86 F.3d 451, 453 (5th Cir. 1996).

[16] *See Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[17] *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (per curiam).

[18] *See Sackett v. EPA*, 566 U.S. 120, 122 (2012).

agency action."[19] Without a final agency action, the court has no jurisdiction to consider challenges to agency conduct.[20]

Under *Bennett v. Spear*,[21] the court applies a two-prong test to determine whether an agency action is "final."[22] "First, the action must mark the 'consummation' of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'"[23]

Here, the plaintiffs argue that the Corps' refusal to verify Spring Branch's project under the NWPs, the Corps' NOVs, and the cease-and-desist letters were all final agency actions.[24] But a plain-language reading shows that they were all intended as intermediate actions, not final agency decisions.

---

[19] *Sierra Club v. Peterson*, 228 F.3d 559, 565 (5th Cir. 2000) (citing 5 U.S.C. § 704).

[20] *Id.*

[21] 520 U.S. 154 (1997).

[22] *Jama v. Dep't of Homeland Sec.*, 760 F.3d 490, 495 (6th Cir. 2014).

[23] *Bennett*, 520 U.S. at 177–78, (1997) (internal citations omitted), *cited by Jama*, 760 F.3d at 495–96; *see also Franklin v. Massachusetts*, 505 U.S. 788, 797, (1992) ("The core question is whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties.").

[24] Dkt. 10 ¶¶ 21 & 23.

First, in its letters denying verification, the Corps states that "to receive authorization for the proposed project, [Spring Branch] must re-apply under an individual permit."[25] A notice that a PCN cannot be verified under an NWP and that the applicant should seek an individual permit is not a final agency action.[26] It is interlocutory—not the "consummation" of the decision-making process as required by the first prong of *Bennett*.[27] Accordingly, it is not reviewable under the APA.

Likewise, the NOVs were also intermediate rather than final agency actions. In each of them, the Corps "advise[s]" that no other work or discharge occur that may fill in or affect any aquatic site "until this matter is resolved."[28] The Fifth Circuit has held that such NOVs are not final agency actions.[29]

---

[25] Dkt. 13-4 at 1; Dkt. 13-6 at 1; *see also* Dkt. 10 ¶ 23.

[26] *See Avella v. U. S. Army Corps of Eng'rs*, No. 89-10064-CIV-KING, 1990 WL 84499 (S.D. Fla., Jan. 22, 1990), *aff'd*, 916 F.2d 721 (11th Cir. 1990) (holding that a notice of nonconformity with a NWP was not a final agency action subject to judicial review); *see also Friends of Lydia Ann Channel v. Lydia Ann Channel Moorings, LLC*, No. 2:19-CV-00148, 2020 WL 1434706, at *5 (S.D. Tex. Mar. 24, 2020) ("intermediate steps of a multi-stage administrative process, even if completed, are not final actions").

[27] 520 U.S. at 177–78.

[28] Dkt. 13-7 at 1; Dkt. 13-8 at 1.

[29] *See Luminant Generation Co. v. EPA*, 757 F.3d 439, 442 (5th Cir. 2014) (holding that the NOV was not a final agency action because it merely represented a threshold allegation that violations of the Clean Air Act had occurred and did "not commit the EPA to any particular course of action"); *see also Slater Park Land &*

Finally, the EPA's warning letters to Spring Branch also fall short. In the first letter, the EPA informs Spring Branch that "[t]o minimize additional damages, you must cease any ongoing unauthorized discharge of dredged and/or fill material."[30] But it then states that "[t]his is an interim protective measure" and that "restoration of any wetlands and/or environmentally sensitive areas" could be ordered as the case progresses.[31] In the second letter, the EPA "strongly recommend[s]" that Spring Branch "do no further work in the wetlands, streams or channels at the site until the jurisdictional delineation is complete."[32] In each of these letters, the EPA identifies a threshold allegation and outlines a range of possible enforcement options, but stops short of committing itself to any particular action. Under the enforcement provisions of the Clean Water Act, the EPA could mandate restoration, or could seek civil penalties, or both, either through an administrative proceeding or in a civil action in district court.[33] Or it could take no action at all. In any event, the warning letters do not resolve the

---

*Livestock, LLC v. U.S. Army Corps of Eng'rs*, 423 F. Supp. 3d 1076, 1080–82 (D. Colo. 2019).

[30] Dkt. 13-11 at 1.

[31] *Id.*

[32] Dkt. 13-12 at 1.

[33] *See* 33 U.S.C. § 1319.

matter, do not represent a consummation of the decision-making process, and are not final agency actions.

As the plaintiffs have not established any final agency action under the APA, their declaratory-relief claims must be dismissed for lack of subject-matter jurisdiction.

### 5. TAKINGS CLAIMS

In the regulatory context, a takings claim does not ripen until "the government entity [responsible for] implementing the regulations has reached a final decision regarding" how they will be applied.[34] As discussed above, neither the Corps nor the EPA has made any final agency decision about how the Clean Water Act regulations might apply to the plaintiffs' tracts. Thus, the plaintiffs' takings claims are not ripe and must be dismissed for lack of subject-matter jurisdiction.[35]

---

[34] *Palazzolo v. Rhode Island*, 533 U.S. 606, 618 (2001); *see also Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186–94 (1985), *overruled on other grounds by Knick v. Twp. of Scott*, 139 S. Ct. 2162, 2167 (2019); *Severance v. Patterson*, 566 F.3d 490, 496 (5th Cir. 2009) (citing *Williamson Cty.*, 473 U.S. at 186); *Cooley v. United States*, 324 F.3d 1297, 1302 (Fed. Cir. 2003) (finality requirement met when "the applicant has no appeal mechanism available and the denial is based on an unchanging fact").

[35] *Choice Inc. of Tex. v. Greenstein*, 691 F.3d 710, 714–15 (5th Cir. 2012); *Sample v. Morrison*, 406 F.3d 310, 312 (5th Cir. 2005) (per curiam) (citing *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807–08 (2003)); *see also Martin v. United States*, 894 F.3d 1356, 1360 (Fed. Cir. 2018) (courts are "without jurisdiction to consider takings claims that are not ripe").

## 6. PLAINTIFFS' REQUEST TO AMEND

In their response to the defendants' motion, the plaintiffs seek leave to amend their complaint to add a takings claim under the Texas Constitution.[36] But, like under federal law, for a regulatory takings claim to be ripe under Texas law, "there must be a final decision regarding the application of the regulations to the property at issue."[37] As a state-law takings claim would be unripe for the same reason the federal claim is, adding one would be futile. So the request to amend is denied.[38]

\* \* \*

For the reasons above, the court grants the defendants' motion to dismiss. Final judgment will be entered separately.

Signed on Galveston Island on the 17th day of September, 2021.

_____
JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE

---

[36] Dkt. 14 at 15.

[37] *Mayhew v. Town of Sunnyvale*, 964 S.W.3d 922, 929 (Tex. 1998).

[38] *See Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014).